# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

# EASTERN DIVISION.

KNOXVILLE, . . . . . SEPTEMBER TERM, 1885.

THE EAST TENNESSEE, VIRGINIA & GEORGIA RAIL-
ROAD COMPANY v. BENJAMIN RUSH.

1. RAILROADS. *Employe.* An action for damages for a personal injury, caused by collision with the moving train of a railroad company, under the provisions of the Code, sec. 1166, *et seq.*, will not lie in behalf of a servant or employe of the company, whose negligence caused, or contributed to cause, the accident or collision occasioning the injury.

2. SAME. *Same. Fellow-servants.* Several employes of a railroad company, although of different grades, when employed in a common service, are fellow servants within the rule that a servant undertakes to run the risk of injuries from the negligence of his fellow servants.

3. SAME. *Same. Same.* An engineer on a moving passenger train, and a brakeman on a freight train, of the same company, at a depot, who is ordered by the conductor of his train to go along the line of the road to display danger signals to the passenger train, are fellow-servants for the purpose of bringing the train safely into the depot.

10—VOL. 15. (145)

4. SAME. *Same. Pleading and practice.* A brakeman employed to give
   a danger signal, who goes to sleep on the roadway, and is injured
   by the train he is sent to signal, cannot sue the company for dam-
   ages under the Code, sec. 1166, *et seq.*

FROM WASHINGTON.

Appeal in error from the Circuit Court of Wash-
ington county. NEWTON HACKER, J.

W. M. BAXTER and JNO. ALLISON for Railroad.

S. J. KIRKPATRICK and BROWN & DEADERICK for
Rush.

COOPER, J., delivered the opinion of the court.

Action by Rush against the railroad company to
recover damages for an injury to his person by one
of the company's passenger trains. A demurrer to the
declaration was overruled, and upon the trial a ver-
dict and judgment were rendered in favor of the
plaintiff below. Upon the company's appeal in error,
the Referees report that the demurrer should have
been sustained, and the judgment be reversed. Rush
excepts.

The declaration originally contained two counts, one
basing the right of action on the failure of the com-
pany to comply with the requirements of the Code,
sec. 1166, and the other on the principle of the com-
mon law. The latter count was withdrawn at the
trial. The remaining count avers, in substance, that
the plaintiff was a brakeman on one of the defend-
ant's freight trains, and as such was ordered by the

conductor of the train to go along the track of the railroad in an easterly direction from the depot, where the freight train then was, for the purpose of displaying danger signals to one of the defendant's passenger trains then about due from the east; that plaintiff, in pursuance of the order, did go along said track a distance of one-fourth of a mile or more, and placed thereon in a conspicuous manner and place two signal lights, it being in the night time, the one a red light and the other a white light, which, when so placed, could and ought to have been seen by defendant's servants on an approaching locomotive at a distance of at least one-fourth of a mile east thereof; that plaintiff, having so placed said signals, went several yards to the rear or westward thereof, and sat down on said railroad track; that while so sitting plaintiff, overcome by fatigue, fell asleep, in which condition. defendant's train, running out of regular time, came upon him at a great rate of speed, and struck him upon the head, body and limbs, inflicting grievous bodily injury, etc.; that notwithstanding said lights so displayed, and notwithstanding plaintiff himself was plainly visible as a person and obstruction on said track, the defendant's servants on the locomotive of the passenger train were not on the lookout, and when said signals and plaintiff appeared, did not sound the alarm whistle, put on the brakes, and employ every means in their power to stop the train and prevent the accident and injury to plaintiff, as required by statute, but neglected so to do.

The causes of demurrer assigned are that the pro-

visions of the statute do not apply to the state of facts set forth in the declaration, and that plaintiff contributed proximately to his injury by such gross carelessness and negligence as to bar any recovery. So far as the latter cause is concerned, it is clear under our decisions, if the statute applies, that the proximate cause of the plaintiff's injury, upon the facts alleged, would be the negligence of the company's servants in failing to comply with the requirements of the statute, and the plaintiff's contributory negligence would only go in mitigation of damages. The real question is whether the statute applies. And the same question is raised by the judge's charge on the trial, for he expressly told the jury that the statute did apply. The facts brought out on the trial were in substantial accord with the averments of the declaration, but they presented more clearly the gross carelessness of the plaintiff. It was his duty to have taken out torpedoes to place on the track, with a view to notify the servants of the company having charge of the locomotive of the passenger train that there was danger ahead, and further to stand upon the track as the train approached and wave the red light as a signal to stop. Instead of discharging these duties, he neglected them, and went to sleep sitting on the end of a cross-tie, so close to the rail as to be struck by the passing train. His Honor, the trial judge, not only charged that a negligent employe was entitled to the benefit of the statute, but added: "One who becomes the servant of a railroad company undertakes to run all the ordinary

risks of the service, and this includes the risks of injuries, not only from his own want of skill or care, but likewise the risk of injuries from the negligence of his fellow-servants; but he would not in this be taken to assume the risk of being run over when he might appear as an obstruction out upon the main track, and when the railroad company fails to show that it complied with the statutory precautions and regulations." The demurrer and the judge's charge both, therefore, raise the same question, whether the statute applies to a railroad employe in the regular discharge of his duty. For it may be conceded, for the purposes of this case, that an employe off duty, who is injured on the track by a moving train, might be entitled to stand like an ordinary third person.

The statute, Code, sec. 1166, *et seq.*, provides that when any person, animal or other obstruction appears upon the roadway of a railroad company, "the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident," and every railroad company that fails to observe these precautions, the burden of proof to show compliance being on the company, "shall be responsible for all damages to persons or property occasioned by, or resulting from, any accident or collision that may occur." This court has held that the requirements of the statute are mandatory in all cases clearly falling within its provisions, if a compliance with the requirements be possible, although it may appear that their observance would not have prevented

the accident. But in view of the stringent terms of the act, and the manifest object of the Legislature, the court has not extended its provisions to every case which might be embraced in its general language. We have held that the provisions apply only to the injury of persons or property by actual collision on the roadway proper, and not to the injury of passengers caused by obstruction in the road-bed: *Railroad Company* v. *McKenna,* 7 Lea, 313; *Railroad Company* v. *Reidmond,* 11 Lea, 205; *Holder* v. *Railroad Company,* 11 Lea, 176. They have also been held not to apply to the servants and employes of the railroad company about its depot and yards: *Railroad Company* v. *Robertson,* 9 Heis., 276; *Haley* v. *Railroad Company,* 7 Baxt., 239. Nor to a stranger when the company is making up and switching trains within its yard: *Cox* v. *Railroad Company,* 2 Leg. Rep., 168. And in one of the earliest cases in which these sections of the Code were construed, the court announced as one of its conclusions: "That sections 1166, 1167 and 1168 have reference and application, so far as they relate to actions for damages, to the general public, rather than to the agents and servants employed in the running of trains." And added: "An action will not lie in behalf of an agent or servant of that kind, whose negligence or wilful act caused, or contributed to cause, the accident or collision occasioning him injury": *Railroad Company* v. *Burke,* 6 Cold., 45.

This last clause, it seems to me, strikes the true note. The statute was intended for the benefit of

the general public, not for the servants of the company, and clearly not for a servant whose negligence caused, or contributed to cause, the accident. The Legislature surely never intended that a railroad company, by a mere non-compliance with certain precautionary forms, made obligatory as to strangers, whether their observance would have prevented the act or not, should become liable to an employe whose plain dereliction of duty caused the accident. In such a case, to use the language of Judge McFarland in *Railroad Company* v. *Robertson, ut supra,* the liability of the company to its agent for injuries resulting from the misconduct or negligence of that agent, must be determined, not by statute, but by common law principles.

For another reason the statute ought not to apply. We have held, as his Honor the trial judge charged in this case, that an employe of a railroad company, as between him and his employer, undertakes to run all the ordinary risks of the service, and this includes the risk of injuries from the negligence of his fellow servants: *Railway* v. *Handman,* 13 Lea, 423. Our decisions, as shown by the citations in that case, are that several servants, although of different grades, when employed in a common service, as an engineer and fireman on a locomotive, the foreman of a job and a common laborer working on the job, an engineer and an assistant fireman, are fellow servants. And in *Railroad Company* v. *Wheless,* 10 Lea, 471, it was held that the engineer is not the superior, but the fellow servant of the brakeman as members of

the crew of a railroad train.    And in *Railroad Company* v. *Gurley*, 12 Lea, 46, it was taken for granted that the engineer of a passenger train and the yard-master of a depot, whose duty it was to turn the switch by which the train was to take the proper rails to reach its stopping place at the depot, were fellow servants to that end.    Precisely for the same reason, the engineer of such a train and the servant employed to swing a danger signal to guide the action of the engineer in coming into a depot, are fellow servants.    This is conceded by the trial judge in his charge in this case, but he thinks the statute takes the case out of the rule.    But that would make a statute, intended for a different purpose, abrogate a fundamental rule governing the relation of master and servant.    It would make an exception to a general rule in favor of a grossly delinquent servant, and give a premium to negligence.    The statute does not require, and ought not to receive, such an extension.

The report of the Referees will be confirmed, and the judgment below reversed.    The result is that the demurrer to the first count in the declaration is sustained, and, as the second count was withdrawn by the plaintiff, judgment final will be rendered here against plaintiff for costs.